SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**RAFAEL MORA CONTRERAS,**

**Defendant.**

**3:26-cr-00060-AN-01**

**GOVERNMENT'S DETENTION MEMORANDUM**

While on state supervision for Manslaughter in the First Degree and Kidnapping in the Second Degree, the defendant coordinated and supervised the transportation of twenty-eight pounds of methamphetamine and six kilograms of cocaine. Given these facts and circumstances, his request for release should be denied because he poses a significant danger to the community and a risk of nonappearance.

/ / / /

/ / / /

## I. **Facts**

The DEA conducted a long-term investigation into a drug trafficking organization (DTO) operating in the Forest Grove area. On January 26, 2026, agents obtained authorization to wiretap the phone of a codefendant. Intercepted communications revealed the codefendant was low on drug inventory and needed a resupply from Mexico.

On February 13, 2026, agents intercepted calls between the defendant and the codefendant coordinating a shipment of twenty-eight pounds of methamphetamine and an unknown amount of cocaine using coded language. They also agreed to split a "whole one" for "14," which agents believe referred to dividing one kilogram of cocaine at a wholesale price of approximately $14,000.

Agents also obtained a warrant for the defendant's cellphone geolocation data. It showed his phone traveling to the Los Angeles, California, area and then heading north on February 17, 2026. DEA and Oregon State Police located the defendant driving one vehicle and a known courier for the DTO driving another, with both vehicles appearing to travel in tandem. After stopping both vehicles, agents discovered twenty-eight pounds of methamphetamine and six kilograms of cocaine in the courier's vehicle.

/ / / /

/ / / /




Although no drugs were found in the defendant's vehicle, his cellphone was seized and searched pursuant to a warrant. The search confirmed he coordinated the transportation of narcotics from Los Angeles to Oregon. The defendant took deliberate steps to conceal his involvement, including renting two separate vehicles from airports for transport, using tandem driving tactics indicative of advanced tradecraft, and having a female courier carry the drugs to distance himself from the load. In addition to receiving payment for transportation, he also planned to profit further by splitting a kilogram of cocaine with the codefendant for resale.

/ / / /

/ / / /

## II. Criminal History

The defendant's prior convictions for Manslaughter in the First Degree and Kidnapping in the Second Degree do not fully capture the underlying conduct. In July 2000, the defendant and a coconspirator kidnapped the victim, stabbed and shot the victim, and dumped the victim's dead body in a rural area near Hagg Lake. Investigators believed the motive was to prevent the victim from marrying the defendant's sister.

In 2003, a jury convicted the defendant of Aggravated Murder, and he received a life sentence. The conviction was affirmed on appeal. He later pursued post-conviction relief, claiming ineffective assistance of counsel. After nearly nine years of post-conviction litigation, the Aggravated Murder conviction was overturned because defense counsel failed to object to concealed leg restraints and/or a concealed stun belt during trial.

Faced with retrying a complex decades-old murder case with retired prosecutors and detectives and unavailable witnesses, the Washington County District Attorney's Office negotiated a plea agreement. The defendant pled guilty to Manslaughter in the First Degree and Kidnapping in the Second Degree and received a sentence of twenty-five years and ten months, followed by three years of state supervision.

The defendant was released in July 2024. Investigators believe he returned to drug trafficking shortly thereafter and remained actively involved until his arrest by the DEA, all of which occurred while on state supervision.

## III. Law and Argument

### A. Rules of Evidence Do Not Apply at Detention Hearing

"The Federal Rules of Evidence do not apply in detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present

evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D. Cal. 2007).

### B. The defendant should be detained on the Supervised Release in 3:20-cr-00492-AN

Under Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a)(1), the Court is required to detain a defendant facing supervised release violation allegations unless the defendant proves—by clear and convincing evidence—that he is neither a flight risk nor a danger to the community. The defendant cannot meet that standard.

### C. There is a Rebuttable Presumption of Detention for 3:26-cr-00060-AN

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of

detention. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community. *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989) (Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society."). Congress included the presumption of detention in the Bail Reform Act with an eye towards the particular dangers posed by those charged with "major drug felonies," who "are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act)

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal

history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*.

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## IV. Argument

He has violated the most fundamental condition of supervision: obeying all laws. His actions reflect a deliberate disregard for legal requirements and a continued willingness to endanger the community for personal gain. This pattern leaves no basis to conclude that he presents anything other than an ongoing threat to public safety and a significant risk of non-appearance.

Moreover, this is an individual who has killed someone solely because he did not want the victim to marry his sister. That history raises urgent questions: what would he be willing to do to the confidential informants in this case? What would he be willing to do to codefendants who may choose to cooperate? If released, his prior behavior demonstrates that he is not someone who can be effectively supervised. He is a sophisticated offender willing to take steps to insulate himself from detection. If not for the wiretap in this investigation, he likely would still be in the community trafficking large quantities of drugs while under supervision.

## V. Conclusion

For the reasons set forth herein, we respectfully request the Court find that the defendant poses an unacceptable risk of non-appearance at future court hearings and that he is a danger to the community and that he should remain in pretrial custody pending trial.

Dated: September 9, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/Lewis S. Burkhart*________________
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney